Not Intended for Print Publication

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **CONSTANCE LOOSEMORE, TRUSTEE, ETC.,** ) ) ) | |
| ) | Case No. 2:05CV00008 |
| Plaintiff, ) | |
| ) | **OPINION** |
| v. ) | |
| ) | By: James P. Jones |
| **JUDY R. STREET, ET AL.,** ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

*Daniel H. Caldwell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Hunter, Smith & Davis, LLP; Henry S. Keuling-Stout, Big Stone Gap, Virginia, for Constance Loosemore, Trustee.*

In this motion seeking enforcement of a lien for attorneys' fees, I must decide the reasonableness of the legal fees incurred on behalf of the landlord in a commercial lease dispute. Based on the evidence and applicable law, I find that the attorneys' fees sought are reasonable, and will enforce the lien.

I

The underlying lawsuit that produced this controversy over attorneys' fees involved the ground lease of a shopping center. Constance Loosemore, Trustee, the landlord, filed this action contending that the tenant, Judy R. Street, had failed to

maintain the premises and seeking damages and a declaration by the court that Street had been properly evicted from her tenancy. Street filed a counterclaim seeking damages resulting from her eviction and reinstatement of her possession of the property. The law firm of Hunter, Smith & Davis, LLP ("Hunter, Smith") represented Loosemore in the case until the disagreement over its fees caused it to withdraw as her counsel. New counsel appeared and the underlying dispute over the lease was eventually settled. Under the settlement, Street agreed to perform certain specified maintenance of the property and to increased rent, and Loosemore agreed to a continuation of Street's tenancy. Pursuant to the settlement, certain funds held in the registry of this court and the Circuit Court of Scott County, Virginia (where parallel litigation was pending) are to be paid to Loosemore.

At the time of Hunter, Smith's withdrawal, this court entered an agreed order recognizing that Hunter, Smith had given notice of a lien for its unpaid attorneys' fees and providing that the amount due to satisfy the lien would be determined at the conclusion of this action. (Order, July 11, 2005, ¶ 2.) After the settlement, Hunter, Smith filed a Motion to Enforce Lien. An evidentiary hearing was held on the motion on October 14, 2005, and the parties thereafter briefed the issues. The motion is thus ripe for decision.

II

Pursuant to Federal Rule of Civil Procedure 52(a), the following constitute the court's findings of fact and conclusions of law.

A

Constance Loosemore is the trustee of the Clonce Revocable Living Trust, a family trust established by her grandparents. Until his recent death, Loosemore's father had been the trustee. The present beneficiary of the trust is Loosemore's ninety-seven-year-old grandmother, Elsie B. Clonce. One of the assets of the trust is a shopping center located in Weber City, Virginia.[1] The real property had been leased by the Clonces' pursuant to a written Ground Lease Agreement dated March 9, 1984, to Ed H. Street Jr. and his wife, Judy R. Street, in order to construct the shopping center on the premises. The lease has a basic term of twenty-five years, with options for five additional five-year terms. The Clonces' interest in the property was later transferred to the trust, and Judy Street was assigned her husband's interest in the property upon their divorce.

After her father's passing, Loosemore, a resident of New Jersey and a former investment banker with a college degree in finance, took over family business affairs,

---

[1] The trust assets also include a valuable farm and approximately $500,000 in cash and certificates of deposit.

including the management of the family trust. In January of 2004 she contacted Hunter, Smith, the law firm that had represented her family for twenty years, for advice as to the shopping center and other family matters. The partner in the firm then handling the Clonce family matters was T. Arthur "Buddy" Scott, Jr. Loosemore was concerned with the appearance of the shopping center and believed that Street was not living up to her obligation to properly maintain the premises. She requested that Street be "defaulted" and removed as the ground lease tenant. Scott assisted her in various matters, but in June of 2004, he left Hunter, Smith and the Clonce family files were turned over to Michael S. Lattier, an associate in the firm.

Lattier advised Loosemore that Street did appear to be in default and suggested that a notice of default be given to Street under the terms of the lease. Unfortunately, Lattier did not realize that a separate written modification of the lease agreement existed, providing that the permitted "cure" period allowed following a notice of default had been extended from ten days to ninety days.

The lease agreement provided that notice as to the lease might be given to Judy Street's former husband's business address, "or to such other address as either party may from time to time designate in writing to the other." (Ground Lease Agreement art. VII(C) p. 15.) Lattier confirmed with Loosemore that the last address known for Judy Street was one in Hixson, Tennessee. On September 9, 2004, Lattier mailed a

- 4 -

written notice of default, return receipt requested, to Street at that address, giving her ten days to remedy certain specified alleged maintenance problems. The letter was received and signed for by a person named "Juarez."

Street did not respond to the September 9 letter and on October 11, Lattier sent Street another letter, entitled "Notice of Termination of Lease and Notice of Ejectment," advising her that her tenancy was terminated because she had not undertaken to cure the default. Again, the letter was signed for by "Juarez." Loosemore, with Lattier's assistance, proceeded to contact the various shopping center subtenants, asking them to pay their rent to her and not to Street. A dispute arose with K-VA-T Food Stores, Inc. ("Food City"), a primary subtenant, over Loosemore's legal right to terminate the ground lease and the terms of a possible new lease agreement.

On January 5, 2005, Lattier came across the modification to the original lease and immediately notified Loosemore that it required a ninety-day cure period rather than ten days, as set forth in the default notice. Lattier suggested that another notice be sent, but Loosemore declined that advice because she felt that Street had had adequate time to cure any default.

Because the dispute with Food City was dragging on, Lattier and Loosemore decided to file suit in this court against Street and Food City. Street counterclaimed,

- 5 -

contending that she had never received the notice of default, that it was not sent to an authorized address, that the notice was defective because it gave her only ten days to cure, and that she had not violated her obligations under the lease. Street also filed a similar action in state court, which Loosemore attempted unsuccessfully to remove to this court.

Under the terms of the eventual settlement, Street is to perform certain specified maintenance and to place $102,000 in escrow to fund this work. According to an engineering study obtained by Loosemore, this is the amount necessary to cure the immediate and short-term "material deficiencies" in the property. In addition, the rent was increased and Loosemore was to receive the funds on deposit in state court ($31,600) and in this court ($20,250).[2] The parties otherwise remain bound by the lease agreement.

There was no written employment agreement between Loosemore and the Hunter, Smith firm. The firm billed monthly on an hourly rate basis, charging $150 per hour for Lattier's time, together with any out-of-pocket expenses such as telephone, fax, and computer-assisted legal research. Other attorneys in the firm also performed work, and their time was charged between $95 and $185 per hour. The

---

[2] The state court deposit was of subtenants' rent that otherwise would have gone to Street; the deposit in this court was of Street's rental payments to Loosemore.

- 6 -

last monthly bill paid by Loosemore was dated January 31, 2005, which was paid on March 7, 2005, leaving unpaid time and expenses from January through August 2005. There were prior bills that had been paid totaling $11,985.44, and there remains unpaid the sum of $29,455.24. Of the amount already paid, $2,935.29 represented legal services for the Clonce family unrelated to the present lease controversy. (Hunter, Smith Ex. 3.) Thus, the fees and expenses for the present controversy, both paid and unpaid, total $38,505.39.

Loosemore objects to paying the full unpaid balance of the legal bills.[3] She contends that absent Lattier's errors in preparing the notice of default, there would have been no need to defend the counterclaim and state court action by Street. She also objects because other attorneys in the firm performed billable services without her express authorization. Furthermore, she argues that she should not be charged for a letter written to her justifying the fee and for time spent in transferring the matter to Loosemore's new attorney. She is agreeable to paying an additional $7,964.45, rather than the $29,455.24 claimed.

---

[3] No objection is made to the validity of the lien on the funds deposited in this court, *see* Va. Code Ann. §§ 54.1-3932, -3933 (Michie 2005); the only issue is as to the amount thereof.

- 7 -

B

Hunter, Smith has the burden of proving that the fees requested are reasonable. *See Chawla v. Burger Busters, Inc.*, 499 S.E.2d 829, 833 (Va. 1998).[4] In determining a reasonable fee, the court must consider a number of factors, including "whether the services were necessary and appropriate." *Id.*

After a careful review of the evidence, I find that the attorneys' fees here are reasonable. Even assuming that Lattier made a mistake in not discovering the modification to the lease agreement before the notice of default was sent, this error did not affect the outcome of the case or the necessity for the services provided.[5] It is clear that Street would have contested the default regardless of any error in the notice. Street's arguments about the notice were merely sideshows to her principal

---

[4] Hunter, Smith's offices are located in Tennessee, but the litigation was in Virginia, the location of the shopping center. Virginia law thus applies. *See Gregory v. Chem. Waste Mgmt., Inc.*, 38 F. Supp. 2d 598, 626 (W.D. Tenn. 1996) (applying state law standard of reasonableness of attorneys' fees in state law claim.)

[5] Hunter, Smith contends that the failure to find the modification was understandable, given the fact that Lattier received a number of Clonce family files when Buddy Scott left the firm and the modification was not located in the Street lease file. Moreover, it argues that since Loosemore received a copy of the modification from Buddy Smith prior to his leaving the firm, it was as much her fault as Lattier's that the amended notice provision was overlooked. I need not decide these issues.

- 8 -

contention that she had not violated the terms of the lease and thus did not deserve to have her tenancy forfeited, regardless of the method of notice.[6]

I also find that Loosemore's other objections to the fees are without merit. It was understandable that Lattier relied on other attorneys in his firm, particularly since Loosemore desired quick action when time came to file the federal lawsuit. Lattier associated a partner with him in his court appearances because he was not licenced in Virginia and had limited experience in its courts. The nature of the litigation and its importance to Loosemore certainly justified two attorneys in court. I have carefully reviewed the Hunter, Smith time records and I find no unwarranted duplication of services. It was also proper for Hunter, Smith to bill for its time in responding to Loosemore's complaint about its fees and in handing off the matter to new counsel.

While no express evidence of the reasonableness of the billing rates used has been presented, I know from other cases that the hourly rates here were entirely reasonable and in keeping with those charged in similar litigation in this court. *See*

---

[6] Loosemore also contends that Lattier could have removed any argument about the receipt of the notice by sending the notice to Ed Street's business address, as set forth in the lease agreement. However, even though Street claimed she had not received the notice, the record is clear that she had requested that the Hixon, Tennessee address be used. The lease agreement expressly provides that notice is effective upon mailing to an address designated by a party. (Ground Lease Agreement art. VII(C) p. 15.)

- 9 -

*Double K Properties, LLC v. Aaron Rents, Inc.*, No. 1:03CV00044, 2003 WL 22697218, at *4 (W.D. Va. Nov. 14, 2003) (approving as reasonable hourly rate of $210 in commercial lease litigation as well as total fee of $37,387.34).

The fees sought here are not small, but in light of the amount involved and the results eventually obtained, they are not disproportionately large. Loosemore and her trust received a favorable outcome, which likely would not have been possible without the services provided.

III

Viewing all of the circumstances, I find that the attorneys' fees sought by Hunter, Smith are reasonable and I will grant the Motion to Enforce Lien.

A separate judgment will be entered herewith.

DATED: November 2, 2005

/s/ JAMES P. JONES
Chief United States District Judge

- 10 -

Case 2:05-cv-00008-JPJ-PMS   Document 119   Filed 11/02/05   Page 10 of 10   Pageid#: 392